Filed 4/19/13  P. v. Ulloa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>GERMAN ULLOA,<br><br>    Defendant and Appellant. | G046365<br><br>(Super. Ct. No. 11CF1868)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed in part and reversed in part.

Sachi Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant was convicted of, inter alia, assaulting, battering and stealing from his former girlfriend Margarita Velasco. It is undisputed one of his convictions must be reversed under the lesser included offense doctrine and the amount of his restitution fine must be reduced $40. The only remaining issue is whether the trial court erred in failing to stay appellant's sentence for theft pursuant to Penal Code section 654. Finding no error in this regard, we affirm the judgment in all other respects.

FACTS

On November 13, 2010, appellant grabbed Velasco's cell phone from her and broke it because he thought she was talking to another man. Velasco tried to defuse the situation, but appellant got so worked up, he head-butted her, and she ended up calling the police. In the wake of this incident, Velasco moved to a separate residence. Although she considered her relationship with appellant to be over, she still stayed in touch with him regarding their two children.

In fact, on the night of December 11, 2010, she had appellant baby-sit the children while she was at work. Velasco worked through the night, and the following day, appellant called her and asked when she was coming home. Velasco said she would be home in a while, but appellant was suspicious. After he hung up, he called Velasco's boss and learned she wasn't at work. He then called Velasco back and accused her of lying to him. Velasco told appellant she was on her way to get gas and would be home soon.

When Velasco arrived home, appellant questioned her about her whereabouts, and they began to argue in Velasco's bedroom. During this contretemps, Velasco received a phone call from her friend Joel Madrid. She told Madrid she would call him back and ended the call, but this only fueled appellant's suspicions. He grabbed the phone from Velasco, went into the bathroom and closed the door.

Velasco opened the door and discovered that appellant, as he was wont to do, was going through her phone to find out who had just called her. Velasco tried to

2

retrieve the phone, but appellant tucked it into his pocket. He then grabbed her by the neck and pinned her against the wall. Velasco told him to let her go, but he began choking and threatening her. With his hand around her throat, he told her he was never going to let her alone and would kill her before she ever went out with another man.

Appellant choked Velasco until she passed out. He then carried her to a sofa and went to get her some water. While he was out of the room, Velasco came to and ran for help. Although the police were summoned, appellant fled before they arrived. He continued to stalk Velasco in the weeks to come, and once broke into her house while Madrid was there. Appellant assaulted Madrid, damaged his vehicle, and nearly ran him over as he was leaving the scene.

Based on the choking incident, appellant was convicted of domestic battery with corporal injury and assault. He was also convicted of grand theft for taking Velasco's phone during the incident. The court sentenced him to a total term of three years in prison, including a concurrent term of 16 months for the theft. It also ordered him to pay a restitution fine of $240.

## DISCUSSION

The Attorney General concedes appellant's conviction for assault must be reversed because that offense is a lesser included offense of domestic battery with corporal injury, and the crimes were based on the same conduct. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228.) The state also concedes appellant's restitution fine must be reduced to $200 because, although the statutory minimum for such a fine is now $240 (Pen. Code, § 1202.4, subd. (b)(1)), the statutory minimum at the time appellant committed his crimes was $200, and the trial court intended to impose that amount. (*People v. Souza* (2012) 54 Cal.4th 90, 143 [retroactive application of statute increasing amount of restitution fine violates ex post facto principles].)

The only remaining issue is whether the trial court should have stayed appellant's sentence for theft pursuant to Penal Code section 654. Under that section,

3

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (Pen. Code, § 654, subd. (a).)  The statute "applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction." (*People v. Perez* (1979) 23 Cal.3d 545, 551.)

If, in the latter situation, all of the crimes were incident to one objective, multiple punishment is prohibited.  (*People v. Perez, supra,* 23 Cal.3d at p. 551.) However, if the defendant "entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

Appellant contends he "committed the assaults as a means of committing the theft," but we consider that the least likely explanation of this incident.  The record shows he took Velasco's phone *before* he assaulted her.  In fact, by the time he pinned her against the wall and started choking her, he had already taken her phone and secured it in his pocket.  Had the phone been his objective, he could have walked out with it then. But appellant's apparent intent behind the taking was to deprive Velasco of her property so he could find out who had called her.  In contrast, his intent in attacking her afterwards was quite obviously to do her physical harm because he was angry with her.  Although the attack occurred on the heels of the theft, temporal proximity between the crimes does not preclude multiple punishment. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.)  Because the record supports the trial court's implied conclusion appellant harbored multiple intents during the episode, he was properly punished for the theft.  (*People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

4

## DISPOSITION

Appellant's conviction for assault on count 2 is reversed, and his restitution fine is reduced from $240 to $200.  The clerk of the trial court is directed to prepare a new abstract of judgment reflecting these changes and to send a certified copy thereof to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                    BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.